IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PHILLIP MARTINEZ, Individually,
and as Parent and Next Friend of
PHILLIP and DARLENE MARTINEZ,
Minors, and RICARDO SARMIENTO,

    Plaintiffs,

v.                                                                    NO. 08-cv-1046 WJ/LFG

GARY CARSON and DON MANGIN,
in their individual capacities,

    Defendants.

## MEMORANDUM OPINION AND ORDER DENYING SUMMARY JUDGMENT

THIS MATTER comes before the Court on Defendants Gary Carson and Don Mangin's Second Renewed Motion for Summary Judgment on Qualified Immunity (Doc. 123) and Plaintiffs' Renewed Motion for Partial Summary Judgment as to the Liability of Defendants Carson and Mangin (Doc. 125). In these cross-motions for summary judgment, both parties contend that there are no disputes of material fact and that party is entitled to summary judgment in this case as a matter of law. I find that neither motion is well taken and, accordingly, both motions shall be denied.

### BACKGROUND

**I.     Procedural History**

Phillip Martinez, Sr. and Ricardo Sarmiento are adult Plaintiffs in this case. Phillip Martinez, Sr. represents as Next Friend the Plaintiffs who are minor children (Phillip Martinez,

Jr. and Darlene Martinez).[1] Defendants Don Mangin and Gary Carson ("Defendants"), movants in the instant motion and the only remaining defendants in this case, were at the time of the underlying events employed by the New Mexico Department of Corrections ("NMDC"). *See* Jt. Status Report at 2 (Doc. 20). The Amended Complaint asserts Fourth Amendment violations based on unlawful seizure and excessive force (Counts I and II, respectively) and state tort claims of assault and battery, false arrest and false imprisonment. The state tort claims have been dismissed as to Defendants Carson and Mangin (Doc. 52), and all other defendants, including Lt. Peter Camacho, have been dismissed from this case. Therefore, only Counts I and II against Defendants Carson and Mangin remain.

Defendants have moved for summary judgment on the basis of qualified immunity once before in this case (Doc. 33). The Court denied this motion on the grounds that Defendants were not entitled to qualified immunity for the violations alleged by Plaintiffs, and that the material facts were in dispute, preventing summary judgment (Doc. 55). In April 2010, after taking depositions and otherwise conducting discovery, Defendants filed a renewed motion for summary judgment on the basis of qualified immunity (Doc. 76) and Plaintiffs filed a motion for summary judgment as to liability (Doc. 77). Plaintiffs attached and relied on an exhibit in their motion which contained testimony obtained from Lt. Camacho in violation of an order staying discovery. The Court struck both of these motions, allowed Plaintiffs to depose Lt. Camacho properly, and invited the parties to re-file the motions with new supporting exhibits based on this testimony (Doc. 120). The parties have now done so. Defendants move for summary judgment on all claims against them on the basis of qualified immunity, and Plaintiffs move for summary

---

[1] For the remainder of this opinion, "Plaintiffs" will refer to Mr. Martinez, Sr., and Mr. Sarmiento.

2

judgment on the issue of Defendants' liability for unlawful seizure in violation of the Fourth Amendment. However, the undisputed facts in this case do not justify summary judgment for either side.

## II.     Factual Background

The events on which this lawsuit is based took place on July 6, 2007 around 10 p.m. The New Mexico Department of Corrections ("DOC"), the Rio Rancho Department of Public Safety ("DPS"), and other agencies were participating in a Joint Task Force ("JTF") to intervene in gang operations and identify individuals with outstanding arrest warrants, parole violations, and probation violations in high crime areas of Rio Rancho, New Mexico. Lt. Peter Camacho, an experienced police officer with the DPS, was the primary officer in charge of the JTF. During the relevant events, Lt. Camacho was the driver of the patrol unit, and Defendants Mangin and Carson, DOC employees, were passengers. These facts are undisputed; from there, the parties' respective positions diverge significantly. Because there are so few undisputed issues of fact, the Court will describe each party's factual position in turn for the purposes of these cross-motions.

Plaintiffs contend that they were merely standing together in a patio area adjacent to Mr. Martinez' apartment building in Rio Rancho after Mario Castro (not a plaintiff in this case) had just finished cutting the hair of Mr. Martinez' son, when the car of Defendant officers entered the driveway, turned on high-powered lights and commanded them to stop. Mr. Martinez immediately stopped walking and instinctively put his hands in the air. He was arrested at that point. The officers proceeded to throw Mr. Sarmiento to the ground and forcefully handcuff him. When Rio Rancho DPS officers arrived a few minutes later, Plaintiffs were transferred into the custody of DPS, who held them for several more hours. They were ultimately charged by Lt. Camacho with fleeing and evading a police officer.

Defendants contend that they were justified in stopping and detaining Plaintiffs. Lt. Camacho initially approached the men in order to initiate a consensual encounter. However, as the patrol car arrived on the scene, Lt. Camacho observed the three men glance over their shoulders as if they planned to run, and saw one of the men reach into his pocket, consistent with the behavior of a person engaged in an unlawful drug transaction. Lt. Camacho engaged the car's emergency lights, and the three men started to flee in separate directions. Lt. Camacho focused his attention on Mr. Castro, following him as he ran into an open door of an apartment on the ground floor of the building. After calling dispatch for other officers to come to the area, Lt. Camacho conducted a protective sweep of the apartment. Defendants remained outside and stopped Plaintiffs in front of the apartment building without incident. Defendants did not enter the apartment building, did not participate in a protective sweep of the apartment, and did not have any contact with the persons inside the apartment. They detained Plaintiffs for a few minutes at most, and promptly removed their own handcuffs from Plaintiffs to turn them over to the Rio Rancho DPS officers once they arrived on the scene.

## LEGAL STANDARD

Police officers "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This is an objective standard and requires no inquiry into the officers' state of mind. *Id.* To defeat the defense of qualified immunity, a plaintiff must prove "(1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct." *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (internal quotation marks omitted). If a plaintiff meets this burden, then a third inquiry is presented: whether defendant has

satisfied the usual summary judgment standard of showing that no material facts are in dispute and that he or she is entitled to judgment as a matter of law. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002).

Summary judgment is only appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. Once that burden is met, the nonmoving party must put forth specific facts showing that there is a genuine issue of material fact for trial; it may not rest on mere allegations or denials in its own pleadings. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256-57 (1986). In order to avoid summary judgment, the nonmoving party must put forth enough evidence that a reasonable jury could return a verdict in the nonmovant's favor. *Id.* at 249. A mere scintilla of evidence in the nonmovant's favor is not sufficient. *Id.* at 252. Analysis of a summary judgment motion requires that the court consider all the evidence in the light most favorable to the nonmoving party. *Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006).

## DISCUSSION

I.  **Defendants' Motion for Summary Judgment**

The Court has already analyzed whether Plaintiffs have successfully alleged a violation of their constitutional rights, and whether the law was clearly established with regard to those rights such that reasonable officers would know their conduct violated the law. Memorandum Opinion and Order at 8-15 (Doc. 55). The Court hereby adopts these findings by reference and will proceed with the usual summary judgment analysis. The Court finds that the undisputed

facts viewed in the light most favorable to Plaintiffs do not show that Defendants are entitled to judgment as a matter of law in this case. The Court has previously found disputes of material fact with regard to (1) whether Lt. Camacho communicated to Defendants Carson and Mangin the basis for his reasonable suspicion regarding a possible drug transaction, *id.* at 5-6; (2) whether and in which direction Plaintiffs fled when the officers approached and ordered them to stop, *id.* at 6; and (3) whether and to what extent Plaintiff Sarmiento suffered physical injury as a result of the detention, *id.* At this point, Defendants have not put forth any new evidence which puts a rest to these factual disputes; rather, their new evidence only underscores the intractability of these disputes. The Court accordingly reaches the same conclusion as it did previously.

### A.     Unlawful Seizure

There is a "two-step framework" for determining the constitutionality of an investigatory stop and detention: "(1) the stop must be 'justified at its inception,' and (2) the resulting detention must be 'reasonably related in scope to the circumstances that justified the stop in the first place.'" *United States v. Pena-Montes*, 589 F.3d 1048, 1052 (10th Cir. 2009) (quoting *United States v. Winder*, 557 F.3d 1129, 1133-34 (10th Cir. 2009)). A stop is justified at its inception if the officers "reasonably suspect that a crime is in the offing." *Id.* "Reasonable suspicion arises when 'an officer of reasonable caution' has a 'particularized and objective basis for suspecting the person stopped of criminal activity . . . .'" *Id.* (quoting *Winder*, 557 F.3d at 1133-34). The officers' actions must be "judged against the totality of the circumstances," and the officers' "subjective motivations are irrelevant to [the] inquiry." *Id.*

Although Lt. Camacho has testified that his initial intention in approaching Plaintiffs was to engage them in a consensual encounter, it undisputedly became a nonconsensual encounter requiring the presence of reasonable suspicion or probable cause once the police commanded the

men to stop at the threshold of the encounter. *See* Defs.' Undisputed Material Fact ("UMF") 6 (Doc. 124 at 4; Doc. 128 at 5). Lt. Camacho based his suspicion of criminal activity on the presence of several factors: the men were loitering in a low-lit, high-crime area; one of the men reached into his right front pocket to grab something; and all the three men glanced over their shoulders as if they planned to run away. Doc. 124 at 9; *see* Defs.' Ex. H, Camacho Dep. at 27:8-11 (Doc. 124-1). This led Lt. Camacho to believe that he was observing a drug transaction. Doc. 124 at 9; *see* Camacho Dep. at 18:10-11. Defendants contend that they are entitled to rely on Lt. Camacho's determination of reasonable suspicion for the stop.

 Plaintiffs dispute enough of the facts relied on by Lt. Camacho to create a genuine issue of material fact. Most importantly, they dispute that there was any movement away from the officers as they arrived on the scene with lights blazing. Plaintiff Martinez testified that he stopped walking immediately when he heard the command to stop, Pls.' Ex. 4, Martinez Dep. at 82:14-16 (Doc. 125-4), and Plaintiff Sarmiento testified that, at most, he took a couple of steps perpendicular to the police officers as they arrived on the scene in startled reaction to the presence of bright lights, Pls.' Ex. 5, Sarmiento Dep. at 53:5-13 (Doc. 125-5). These statements are sufficient to create a dispute of material fact as to whether Plaintiffs attempted to flee the police officers. Without evidence of this flight, the officers did not have reasonable suspicion to believe Plaintiffs were committing or about to commit a crime.

 Furthermore, it is not a matter of undisputed material fact whether Defendants are entitled to rely on Lt. Camacho's determination of reasonable suspicion. Although police officers may rely on the observations and conclusions of other officers to determine reasonable suspicion or probable cause in a given situation, that reliance must be based either on communications made by the other officers or must be corroborated by the officers' independent

observation of pertinent facts. "It is well-established that the police may pool their information to establish probable cause. However, [the arresting officer] must point to an officer who has relayed information to, or received information from, fellow officers based on personal observation of the Arrested Plainitffs' [sic] behavior before we may apply this rule." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1282 (10th Cir. 2008) (citations omitted) (internal quotation marks omitted). Simply following along with Lt. Camacho's actions, without an understanding of why he was taking them or why they were justified, is not enough.

*United States v. Chavez*, cited by Defendants, held that collective probable cause exists "where one officer has probable cause and instructs another officer to act, but does not communicate the corpus of information known to the first officer that would justify the action." 534 F.3d 1338, 1345 (10th Cir. 2008). However, *Chavez* approved of a situation in which the second officer who wished to rely on the "collective knowledge" was *not* present during the circumstances leading to the determination of reasonable suspicion or probable cause. In *Chavez*, a New Mexico State Police patrolman pulled over a suspect's car and performed a search pursuant to instructions from DEA agents. *Id.* at 1341-42. The DEA agents conveyed a minimal amount of information to the patrolman, and did not fully explain to the patrolman the basis for probable cause to search the suspect's vehicle. *Id.* at 1342. Nonetheless, the Tenth Circuit found that the patrolman was entitled to rely on the instructions from the DEA. *Id.* at 1348. Unlike in the case at bar, the patrolman had no opportunity to come to a probable cause determination himself; he had no other choice but to believe the DEA. Here, Defendants were present at the scene. They were in the patrol car with Lt. Camacho. If they neither developed the basis for reasonable suspicion themselves nor understood it from Lt. Camacho, they are not entitled to summary judgment.

For the purposes of this motion, it is undisputed that Lt. Camacho did not communicate his observation of the facts described above to Defendants Carson and Mangin, and that Defendants themselves did not observe the behavior supporting reasonable suspicion on the part of the men in question. Defs.' UMF vii-viii (Doc. 128 at 13-14; Doc. 132 at 8). There is some testimony from Defendants that Lt. Camacho did communicate with Defendants regarding his concerns about a possible drug transaction, Pls.' Ex. 2, Mangin Dep. at 36:23-37:4 (Doc. 125-2), but this is not enough to establish as a matter of undisputed fact that the communication was made—especially when Lt. Camacho testified that all he said was: "Let's see what these guys are up to," Camacho Dep. at 16:24; or: "They're going to run," *id.* at 28:10-11.

Absent these factors, Defendants are not entitled to rely on Lt. Camacho's determination of reasonable suspicion to insulate themselves from liability for violations of the Fourth Amendment. There is no law for the proposition that a "tense posture" or "concerned demeanor" on the part of a fellow officer indicates particularized suspicion that a crime is going on. *Cf.* Defs.' UMF 4 (Doc. 124 at 3). As discussed above, it is undisputed for purposes of Defendants' motion that no information regarding Lt. Camacho's suspicion for the drug transaction was conveyed to Defendants.

Because the Court is denying the motion on the grounds that the undisputed facts do not show that there was reasonable suspicion to stop and detain Plaintiffs, the Court will not address Plaintiffs' additional arguments in the context of Defendants' motion.

    **B.    Excessive Force**

In order to recover on an excessive force claim, a plaintiff must show: "(1) that the officers used greater force than would have been reasonably necessary to effect a lawful seizure, and (2) some actual injury caused by the unreasonable seizure that is not de minimis, be it

physical or emotional." *Cortez v. McCauley*, 478 F.3d 1108, 1129 n.25 (10th Cir. 2007) (en banc). However, "in cases involving claims of both unlawful arrest and excessive force arising from a single encounter, it is necessary to consider both the justification the officers had for the arrest and the degree of force they used to effect it." *Id.* at 1127. In other words, the outcome of Plaintiffs' excessive force claim depends on the outcome of their unlawful seizure claim. Because there are disputes of material fact with regard to whether the seizure of Plaintiff Sarmiento was justified at its inception, the Court cannot evaluate whether the force used in connection with that seizure was excessive.

Despite this, Defendants contend that because the testimony in Plaintiff Sarmiento's affidavit and the testimony in his deposition are inconsistent, he has not established the requisite "actual injury . . . that is not de minimis," *id.* at 1129 n.25, in order to recover on his claim, even assuming the seizure was unlawful. This is incorrect. Plaintiff Sarmiento, in his affidavit, claims injuries in the form of "cuts and bruises" to the side of his face, Pls.' Ex 7, Sarmiento Aff. ¶ 10 (Doc. 125-7), and "pain and severe bruising to both wrists, which lasted up to a week after the incident," *id.* ¶ 12. In his deposition, he states that his face was "dirty and bleeding," Pls.' Resp. Ex. 12, Sarmiento Dep. at 71:25 (Doc. 128-5), and that it healed "after several weeks," *id.* at 72:14. Plaintiff Sarmiento does not testify about his wrists or bruising from the handcuffs. This is not facially inconsistent with his sworn affidavit, because, in these passages from his deposition, he is not actually asked about those injuries. The Court finds that these allegations are sufficient to state a claim for excessive force if Defendants did not have a lawful basis for stopping Plaintiff Sarmiento in the first place[2]—and perhaps even if they did, depending on

---

[2] The case of *Sisneros v. Fisher*, 685 F. Supp. 2d 1188 (D.N.M. 2010), in which the arrestee suffered similar injuries to the ones described here, is not on point because the arrestee

which version of the facts is credible. Therefore, Defendants' motion for summary judgment on this claim must be denied.

## II.     Plaintiffs' Motion for Summary Judgment

Plaintiffs move for summary judgment on the issue of Defendants' liability for unlawful seizure in violation of the Fourth Amendment. Because Plaintiffs are not entitled to qualified immunity, the inquiry is simple: whether Plaintiffs have shown that they are entitled to judgment as a matter of law and that there are no genuine disputes of material fact precluding judgment. The Court finds that Plaintiffs have not satisfied this standard.

There is a "two-step framework" for determining the constitutionality of an investigatory stop and detention: "(1) the stop must be 'justified at its inception,' and (2) the resulting detention must be 'reasonably related in scope to the circumstances that justified the stop in the first place.'" *Pena-Montes*, 589 F.3d at 1052 (quoting *Winder*, 557 F.3d at 1133-34). If the stop and/or detention exceeds either these requirements, the stop is transformed into an arrest. *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000). An arrest is "characterized by highly intrusive or lengthy search or detention," and, in the absence of a warrant, an arrest must be supported by probable cause to believe a crime has been or is being committed. *Id.* (internal quotation marks omitted).

Plaintiffs concede that there are issues of disputed fact with regard to whether Defendants had a particularized and objective basis for stopping them sufficient to support reasonable suspicion, but argue that their detention exceeded the scope of an investigative stop. They contend that, even viewing the facts in the light most favorable to Defendants, a full arrest

---

in that case conceded that he suffered no actual injury that was not de minimis. *Id.* at 1218. No such concession is made here.

occurred without probable cause. Plaintiffs argue that the undisputed facts show that Defendants forced them to the ground without affording them any time to respond and obey police commands, handcuffed them, drew weapons on them, and conducted a pat-down search. Plaintiffs remained on the ground handcuffed until Rio Rancho DPS officers arrived on the scene, at which time Defendants escorted Plaintiffs in handcuffs to the Rio Rancho officers. Plaintiffs were only in Defendants' direct custody for two to three minutes. Defs.' UMF 12, 14 (Doc. 124 at 5, 6; Doc. 128 at 8, 10). Defendants removed their own handcuffs from Plaintiffs and turned them over to the Rio Rancho officers, who held them for several more hours—twelve hours in Plaintiff Martinez's case and five hours in Plaintiff Sarmiento's case. Plaintiffs argue that this amounts to a full custodial arrest, and that because Defendants indisputably did not have probable cause to effect a full custodial arrest, Defendants are liable as a matter of law.

The limited use of force used in these circumstances does not conclusively support Plaintiffs' argument that a custodial arrest occurred. It is true that "[t]he use of firearms, handcuffs, and other forceful techniques generally exceed the scope of an investigative detention and enter the realm of an arrest." *Cortez*, 478 F.3d at 1115 (internal quotation marks omitted). However, as the Tenth Circuit has also acknowledged, "law enforcement may (1) display some force, (2) place suspects on the ground, (3) use handcuffs, or (4) detain suspects in law enforcement vehicles, even in the absence of probable cause." *Id.* at 1130. The relevant inquiry therefore is not whether force was used, but whether the level of force was unreasonable, thus transforming the investigative detention into an arrest requiring probable cause. *Id.*

Defendants have maintained that they were justified in using this level of force due to officer safety concerns. While the catchphrase "officer safety" is not an automatic ticket out of liability, police officers are entitled to take actions based on objectively reasonable concerns

about officer safety that they would not be entitled to take absent those concerns. Here, it is undisputed that Defendants were patrolling an area they believed to have a high crime rate, it was late at night, and Plaintiffs were standing around in an area that was not well lit. While these observations do not support the detention itself without particularized evidence of a crime, they are certainly relevant to the issue of officer safety once the stop has been initiated.

Furthermore, one of the men standing with Plaintiffs, Mr. Castro, fled once Defendants approached, and Lt. Camacho pursued the man inside the apartment building. Pls.' UMF 21, 29 (Doc. 125 at 6-7, 8). With no way of knowing who else was present at the scene or what was happening inside the building with Lt. Camacho and the third man, Defendants acted reasonably in detaining Plaintiffs with a showing of force, for a brief period of time. The Court finds that this situation meets all the hallmarks of an investigate detention responsive to officer safety concerns—assuming, of course, that Defendants had a reasonable basis to seize Plaintiffs in the first place.

The length of the detention is also relevant to whether an investigatory stop or a full arrest occurred. *United States v. Holt*, 264 F.3d 1215, 1230 (10th Cir. 2001). The brief detention outside the apartment would be a reasonable response to Defendants' concerns regarding the suspects' flight as well as concerns about the recovery of the third man, Mr. Castro. If Defendants detained Plaintiffs for several hours as Plaintiffs claim, rather than two to three minutes, Plaintiffs would likely be correct that a full custodial arrest occurred. However, this causation argument fails.

A nexus between the conduct of the defendants and the alleged constitutional violation must be clearly alleged in the complaint. *Meade v. Grubbs*, 841 F.2d 1512, 1527-27 (10th Cir. 1988) (requiring an affirmative link between the alleged constitutional deprivation and any

13

conduct by defendants); *see also Robbins*, 519 F.3d at 1250 (allegations concerning each individual defendant are particularly important for qualified immunity defense). At the same time, if a defendant "set into motion" certain acts which caused a violation of a plaintiff's rights, he or she may be liable for that violation. *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990). Even so, the specific affirmative acts which a defendant took to "set into motion" a constitutional violation must still be made clear.[3]

There is no evidence indicating that Defendants promoted, suggested, or indirectly caused or conspired with any Rio Rancho DPS personnel to violate Plaintiffs' rights. Neither is there any evidence to infer in the slightest that Defendants knew, or should have known, that Plaintiffs would be deprived of their rights by the Rio Rancho DPS officers or Lt. Camacho. Defendants took no part in the decision to further detain or charge Plaintiffs once they transferred them to the custody of the Rio Rancho police officers. Pls.' UMF 31 (Doc. 125 at 9; Doc. 129 at 9). Far from supporting Plaintiffs' causation argument, this fact actually defeats it. Defendants may only be held liable for their own unlawful conduct in this case. Thus, Defendants detained Plaintiffs for only a few minutes, conduct which did not amount to a full custodial arrest requiring probable cause. Defendants' liability for unlawful seizure under the Fourth Amendment is thus not established as a matter of law.

## CONCLUSION

Neither party has established that there are no genuine disputes of material fact so as to

---

[3] To the extent that Plaintiffs argue that traditional causation principles in civil tort law mandate a finding of Defendants' liability for the prolonged detention, the Court notes that qualified immunity law differs radically from, and offers significantly more protections to defendant police officers than, standard tort law. Thus, Plaintiffs' tort law arguments are misplaced.

entitle either party to judgment as a matter of law. Material issues of fact remain as to whether Defendants had reasonable suspicion to seize Plaintiffs, and therefore whether Plaintiffs' excessive force claim is viable. Similarly, Defendants did not effect a full custodial arrest of Plaintiffs, and material issues of fact remain regarding their liability for the investigative detention. Defendants Gary Carson and Don Mangin's Second Renewed Motion for Summary Judgment on Qualified Immunity (Doc. 123) is hereby DENIED, and Plaintiffs' Renewed Motion for Partial Summary Judgment as to the Liability of Defendants Carson and Mangin (Doc. 125) is hereby DENIED.

**SO ORDERED.**

UNITED STATES DISTRICT JUDGE