IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PHILLIP MARTINEZ
and RICARDO SARMIENTO,

        Plaintiffs,

        vs.                                  No. 1:08-cv-01046-WPJ/LFG

GARY CARSON and DON MANGIN,
in their individual capacities,

        Defendants.

**MEMORANDUM OPINION AND ORDER FOLLOWING HEARING ON
MOTIONS IN LIMINE AND OBJECTIONS TO EXHIBITS**

THIS MATTER comes before the Court following a hearing on pending motions in limine and objections to exhibits in the above-captioned case, which is set for jury selection and trial on April 4, 2011. The Court made rulings on several of the motions at the hearing, which are included herein. The Court also took other motions under advisement, and the Court's rulings on these motions are included in this Memorandum Opinion and Order.

**I.**     **Defendants' Motion in Limine to Exclude the Testimony of Phillip Martinez, Jr. and Darlene Martinez and to Exclude Any Other Testimony or Evidence Regarding Events that Occurred Inside the Apartment or Concerning the Martinez Children, filed March 21, 2011 (Doc. 147)**

Plaintiffs seek to introduce the testimony of the Martinez children regarding their observations during the incident, including observations of interactions between Defendants and Plaintiffs, as well as the damages suffered by Mr. Martinez, Sr.[1] Defendants contend that this testimony should be excluded because the Defendants had no interaction with the children, and none of the children's observations had anything to do with whether Defendants had reasonable

---

[1] The Martinez children, as well as Darlene Martinez, have been dismissed as Plaintiffs.

suspicion to stop and detain Plaintiffs until the Rio Rancho officers arrived as back-up.

The Court heard argument on this motion, and ruled that the children will be able to testify about their own observations regarding the conduct of Defendants toward their father. Subsequent statements made by Mr. Martinez are inadmissible as hearsay. The Court will also entertain limiting instructions stating that any allegedly tortious actions taken toward the children which occurred inside the house should not be considered by the jury. Therefore, Defendants' motion in limine is GRANTED IN PART AND DENIED IN PART.

**II.     Defendants' Motion in Limine to Exclude Evidence Related to Plaintiff Martinez' Former Excessive Force Claims (Doc. 148)**

Defendants seek to exclude evidence related to Mr. Martinez' excessive force claim, which was dismissed by the Court based on upon Plaintiff's admission that no physical force was used in his detention and arrest. Plaintiff seeks to include this evidence as evidence of damages. Plaintiff intends to testify about the arrest and that the handcuffs were uncomfortable as part of his claim for damages, but will not characterize it as excessive force. Defendants do not object to this testimony as long as Plaintiff does not testify regarding any physical injury.

At the hearing, the Court noted that under *Cortez v. McCauley*, 478 F.3d 1108, 1127 (10th Cir. 2007) (en banc), even reasonable force used in a lawful arrest or detention is relevant to the context of such claims. The Court ruled that an objection by defense counsel would be appropriate if Mr. Martinez testified that excessive or unreasonable force was used, and the Court will instruct the jury that Mr. Martinez does not have an excessive force claim.

**III & IV.     Defendants' Motion in Limine to Exclude References or Evidence Related to "Curtilage" (Doc. 149) and Defendants' Motion in Limine to Exclude Newly Disclosed Photographs from Evidence (Doc. 146)**

Defendants seek to prohibit use of the term "curtilage" as well as any notion or suggestion by Plaintiffs that Defendants were invading private property or property in which

2

Plaintiffs have an expectation of privacy. Defendants argue that such evidence is misleading and prejudicial, since a search warrant is required in order to invade areas defined as curtilage. Plaintiffs do not intend to use the word "curtilage" to the jury, but intends to elicit testimony regarding the nature of the place and its use. Plaintiffs' counsel also stated that the jury should be allowed to infer from this evidence that Defendants were unlawfully intruding on an area which the Plaintiffs considered private.

Defendants also seek to exclude photographs of the area of the residence where the incidents occurred on the basis of untimely disclosure and relevance.

At the hearing, the Court DENIED Defendants' motion regarding admission of the photographs providing that Plaintiffs lay a proper foundation at trial, and also found no prejudice to Defendants in the late disclosure of this evidence. The Court also allowed Defendants to take photographs they might want to introduce for rebuttal purposes. The Court GRANTED Defendants' motion regarding reference to curtilage. Based on the Court's examination of the photographs presented by Plaintiffs, as well as the relevant law regarding curtilage, the Court noted that the sides to the area were open, there was no garage door, and other residential units were in close proximity as well as the public street. The Court concluded that the area where Plaintiffs were standing was not curtilage and Plaintiffs did not have an expectation of privacy in that area. The Court also will not allow argument or inference to be made that Plaintiffs had an expectation of privacy in that area.

**V.     Defendants' Motion in Limine to Exclude Evidence of Plaintiffs' Arrest, Damages from Arrest, Probable Cause, Charges Against Plaintiffs and Result Thereof, and any Events that Occurred After Defendants' Initial Detention of Plaintiffs (Doc. 145)**

This is the most strongly contested legal issue in this case. Defendants' position is that

the Court has dismissed any claim for unlawful arrest by Plaintiffs against Defendants Carson and Mangin. Plaintiffs argue that the claim is still viable on two grounds: first, that the initial seizure conducted by Defendants was sufficiently intrusive to constitute a full custodial arrest; and second, that the initial seizure is a proximate cause of Plaintiffs' subsequent arrest by the Rio Rancho officers.[2]

The first argument fails because it has been addressed carefully by the Court, and has been dismissed on summary judgment. The undisputed facts were that the detention was brief:

> Plaintiffs argue that the undisputed facts show that Defendants forced them to the ground without affording them any time to respond and obey police commands, handcuffed them, drew weapons on them, and conducted a pat-down search. Plaintiffs remained on the ground handcuffed until Rio Rancho DPS officers arrived on the scene, at which time Defendants escorted Plaintiffs in handcuffs to the Rio Rancho officers. Plaintiffs were only in Defendants' direct custody for two to three minutes.

Doc. 135 at 12; *see also* Pls.' Resp. to Defs.' Motion for Summary Judgment, UMFs 12-14 (Doc. 128 at 8-10) (containing the same facts). Based on the undisputed facts, the Court found that the scope and length of the detention was justified as a matter of law:

> Furthermore, one of the men standing with Plaintiffs, Mr. Castro, fled once Defendants approached, and Lt. Camacho pursued the man inside the apartment building. With no way of knowing who else was present at the scene or what was happening inside the building with Lt. Camacho and the third man, Defendants acted reasonably in detaining Plaintiffs with a showing of force, for a brief period of time. The Court finds that this situation meets all the hallmarks of an investigative detention responsive to officer safety concerns—assuming, of course, that Defendants and a reasonable basis to seize Plaintiffs in the first place.

Doc. 135 at 13.

At the hearing, Plaintiffs' counsel argued that Plaintiffs' detention became a full-blown arrest when handcuffs were applied. This argument does not comport with the law. An initial

---

[2] Plaintiffs have also filed a trial brief reiterating this position. Doc. 172.

stop and detention does not automatically elevate into an arrest where police officers use handcuffs on a suspect or place him on the ground. *United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir. 1993). Under Plaintiffs' argument, a police officer would not be able to place handcuffs on an individual for purposes of officer safety. *See id*. (police officers are "authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of [a *Terry*][3] stop"); *United States v. Hensley*, 469 U.S. 221, 235 (1985) ("intrusive precautionary measures" such as handcuffs or placing a suspect on the ground during a *Terry* stop do not necessarily turn a lawful *Terry* stop into an arrest under the Fourth Amendment). Accordingly, based on the undisputed facts of this case, the detention of Plaintiffs by Defendants Carson and Mangin did not amount to an arrest.

Plaintiffs' second argument is a closer call only because the Court did not sufficiently clarify the import of its findings. Those findings, nevertheless, concluded as a matter of law, that Defendants Mangin and Carson were not liable for the actions of the Rio Rancho police officers which culminated in Plaintiffs' arrest. In the Memorandum Opinion and Order addressing both parties' cross-motions for summary judgment, the Court stated:

> There is no evidence indicating that Defendants promoted, suggested, or indirectly caused or conspired with any Rio Rancho DPS personnel to violate Plaintiffs' rights. Neither is there any evidence to infer in the slightest that Defendants knew, or should have known, that Plaintiffs would be deprived of their rights by the Rio Rancho DPS officers or Lt. Camacho. Defendants took no part in the decision to further detain or charge Plaintiffs once they transferred them to the custody of the Rio Rancho police officers. Pls.' UMF 31 (Doc. 125 at 9; Doc. 129 at 9). Far from supporting Plaintiffs' causation argument, this fact actually defeats it. Defendants may only be held liable for their own unlawful conduct in this case. Thus, Defendants detained Plaintiffs for only a few minutes, conduct which did not amount to a full custodial arrest requiring probable cause. Defendants' liability for unlawful seizure under the Fourth Amendment is thus

---

[3] *See Terry v. Ohio*, 392 U.S. 1, 21 (1968).

     not established as a matter of law.

Doc. 135 at 14. While the Court did not distinctly address the consequences of these findings relative to Defendants' cross-motion for summary judgment, those findings are as valid now as they were then: there was no issue of disputed fact suggesting either that Defendants' short detention and seizure amounted to arrest requiring probable cause, or that Defendants caused Plaintiffs' subsequent arrest, regardless of which party was the movant and bore the burden of proof. Thus, the elimination of the unlawful arrest claim for trial does not require the Court to revisit its findings on summary judgment – as Plaintiffs' counsel suggests.

     Further, there is no reason for the Court to reconsider its findings on this issue, as there are no new facts or evidence for the Court to consider, and no mistake of law that has been made. *See Servants of the Paraclete, Inc. v. Great Am. Ins.*, 866 F. Supp. 1560, 1581 (D.N.M. 1994) (motions to reconsider granted where: 1) a manifest error of law or fact has been committed by the court; 2) new evidence has been discovered; or 3) there has been an intervening change in controlling law). In Plaintiffs' Renewed Motion for Partial Summary Judgment, Plaintiffs presented the following undisputed facts describing the extent of Defendants' participation in the incident:

> 28. The Rio Rancho police officers then placed a second set of handcuffs on Plaintiffs Martinez and Sarmiento, after which Defendants Carson and Mangin removed the first set of handcuffs from each Plaintiff and turned them over to the Rio Rancho police officers.
>
> . . .
>
> 31. Defendants Carson and Mangin did not communicate with Lt. Camacho or any other police officers about what charges should be filed against Plaintiffs Martinez and Sarmiento or whether these Plaintiffs should continue to be detained for any period of time.
>
> 32. Instead, Lt. Camacho arranged to transport Plaintiffs Martinez and Sarmiento to the

>Rio Rancho police station and decided what charges to file against them based solely on his own observations. Lt. Camacho then charged Plaintiffs Martinez and Sarmiento with fleeing and eluding in violation of N.M. Stat. Ann. § 30-22-1(B), even though, as noted in the evidence cited in Paragraph 20 above, he did not observe the interactions among these Plaintiffs and Defendants Carson and Mangin after Lt. Camacho stated the words "stop" and "police."

Doc. 125 at 8-9 (Pls.' Stmt. of Undisp. Facts, as numbered above); *see also* Pls.' Resp. to Defs.' Motion for Summary Judgment, UMFs 12, 14 (Doc. 128 at 8-10) (not contesting that Defendants "did not have any further participation in decisions concerning Plaintiffs" after Rio Rancho police officers arrived on the scene). In addition, Lieutenant Camacho's testimony underscores that Defendants Carson and Mangin had no role in the decision whether to continue the detention in order to bring charges against Plaintiffs, or what charges to bring[4]:

> A. [Camacho]: . . . I'll state that and emphasize that it was quite evident that these three individuals were eluding police officers.
> Q. And that was what you actually charged them with, isn't it?
> A. That is correct.
> Q. And was that your personal decision?
> A. That was your personal decision?
> A. That was.
> Q. Did you have any consultation with either of the two defendants, Mr. Mangin or Mr. Carson, regarding those particular charges?
> A. Mr. Mangin and Mr. Carson turned them over to me. I coordinated with our officers, Rio Rancho Police Department, to transport them to our main station in front of Quantum Road, at which time I produced the paperwork for processing and booking to include a probable cause statement for all three individuals, court reports and book-in sheets which accompanied them to Sandoval County Detention Center.
> Q. I understand and thank you for the clarification. But going back to any conversations that you might have had at the location at 323 Geraldine with either Mr. Carson or Mr. Mangin, did you consult with them or have a conversation with them about potential charges?
> A. No. They would be unfamiliar with our charge program or our charge policies. Me being the lead officer not only for the supervisory detail of the tac [sic] plan, but also being the lead representative for the City of Rio Rancho within that vehicle, I felt it was 25 appropriate that I charge all

---

[4] Officer Camacho is no longer a Defendant in this case.

> three individuals with the appropriate charge of fleeing and eluding. And I did so.
>
> Q. And is it a true statement that after Mr. Carson and Mr. Mangin laid hands on Mr. Martinez and Mr. Sarmiento that Mr. Martinez and Mr. Sarmiento were not free to leave the scene?
>
> . . .
>
> A. That is correct. I made the decision at that point the three would be charged with fleeing and eluding.
>
> Q. And, again, this may seem to you like fine slicing. But when did that charge -- when did you make the decision to make that charge?
>
> A. Well, after we let things come to a calm, so to speak, after we were able to retrieve the third individual, Mr. Castro, within the apartment, there's a point, and I don't know exactly when, there's a point where you need to evaluate the situation and figure out what you're going to do next. And that is exactly what I did. All three were at that point handcuffed. And it was my determination that the appropriate charge was fleeing and eluding for all three individuals based on the fact that we were unable to find any narcotics in the area.
>
> Q. And so it's a correct statement that from the moment Mr. Mangin and Mr. Carson laid hands on either of the individuals, that the two individuals, Mr. Martinez and Mr. Sarmiento, were not free to leave at any point after that?
>
> A. No, they were not free to leave.
>
> Q. Is it your understanding that Mr. Carson and Mr. Mangin arrested these individuals?
>
> A. I believe I arrested all three individuals.

Doc. 125-1 at 36-39.

At the hearing, Defendants' counsel pointed out that it is undisputed that while Defendants had the authority to hold Plaintiffs in custody, they had no arrest power and were equivalent to peace officers as employees of the Corrections Department. N.M. Stat. Ann. § 33-1-10; *see also Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008) (where facts were undisputed that defendant did not order, direct, or even know of plaintiff's arrest or the deployment of a nonlethal projectile against him, no "affirmative link" existed between defendant's alleged actions and plaintiff's arrest). Defendants' conduct was limited to containing the situation and moving to the perimeter until the Rio Rancho police arrived to

assist.  Defendants were not law enforcement.  They were not privy to which laws – if any – were being violated, or what charges would be appropriate. These were decisions which clearly were handled by Lieutenant Camacho alone, by his own testimony – and that testimony was presented by Plaintiffs as undisputed in their response to Defendants' motion for summary judgment and their own cross-motion for summary judgment.

Further, while Defendants Carson and Mangin were detaining Plaintiffs outside, a search was being conducted inside the apartment by Lieutenant Camacho.  Defendants had no knowledge of the developments that were taking place as a result of the search or what Lieutenant Camacho was observing inside the apartment, and thus could not know whether there was a basis to cease the detention or continue the detention.  It is also important to note that Mario Castro, a third individual who was standing with Plaintiffs but fled inside the house during the initial stop, was still not located by the time Defendants handed Plaintiffs over to Rio Rancho officers.  Thus, a search was still being conducted, and there was no reason for Defendants to terminate the stop and release Plaintiffs.

All of these facts remain undisputed.  At the hearing, Plaintiffs did not rebut any of these facts, or offer any evidence which would justify the Court reconsidering its former decision regarding this claim.  Rather, Plaintiffs cited to various cases which state the law correctly, but which have no application to this case and are all distinguishable.  In all of the cases on which Plaintiffs rely, the defendant has committed some kind of affirmative act which would satisfy the causation question in a § 1983 claim.  *See Buck v. City of Albuquerque*, 549 F.3d 1269, 1279-80 (10th Cir. 2008) ("'Any official who "causes" a citizen to be deprived of her constitutional rights can also be held liable. The requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others

9

to deprive the plaintiff of her constitutional rights.'" (quoting *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990))).  In those cases, the defendants assisted or acquiesced in the use of false information to be used against an individual.  *See, e.g.*, *Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006) (defendants falsely represented that they had lawful authority to search a residence).  Also in those cases, there was classic reliance by fellow officers on the defendant who "caused" the constitutional deprivation.  *See United States v. Chavez*, 534 F.3d 1338, 1347 (10th Cir. 2008) (officers may rely on information furnished by other law enforcement official to establish reasonable suspicion, and to develop probable cause for arrest).  Here, Lieutenant Camacho was undisputedly the person who relayed pertinent information to the Rio Rancho police which resulted in a continued detention leading to an arrest.[5] There was no flow of communication from Defendants to Lieutenant Camacho, from which it could then be inferred that the Rio Rancho police relied on any actions or communication from Defendants in detaining and arresting Plaintiffs.

Plaintiffs' counsel argues that causation may rest on conduct which is limited to releasing Plaintiffs' handcuffs and turning Plaintiffs over to be handcuffed by the Rio Rancho police.  This advances a but-for theory of causation rather than the proximate cause theory required for liability under § 1983.  Under *Buck* and *Snell*, a plaintiff must show that a defendant set in motion events that defendant *knew or should have known* would cause others to deprive a plaintiff of his constitutional rights.  Here, it is undisputed that Defendants Carson and Mangin were not in the loop to know what information was being gathered during the investigation,

---

[5] The Court should note that a finding has not been made that Plaintiffs' subsequent arrest by the Rio Rancho police was unlawful. There would be no causation issue at all if the arrest was found to be lawful. However, for purposes of this analysis, the Court assumes that it was unlawful.

which was still taking place at the very moment they turned Plaintiffs over to the Rio Rancho police.  Defendants were not part of that search.  While Defendants technically "set in motion" a series of events, Plaintiffs must nevertheless offer evidence of some level of participation in the alleged constitutional deprivation. *See Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997).  This participation need not be direct, but there still must be a nexus between a defendant's conduct and the deprivation.  The notion that there was something Defendants could have done is not enough.  Defendants Carson and Mangin did not participate in the continued investigation inside the building to know if drugs or weapons had in fact been found.  Defendants could have had no basis to know that there was probable cause for arrest any more than they could know that there was no longer a basis for detention.  Thus, Defendants could not know, or have reason to know, that they would "cause others to deprive" Plaintiffs of their constitutional rights based on an unlawful arrest.

Based on the foregoing, and on a careful consideration of counsel's arguments on both sides, the Court stands by the findings made in the cross-motions for summary judgment (Doc. 135).  The Court GRANTS Defendants' motion to exclude evidence of Plaintiffs' arrest, whether there was probable cause for that arrest, and any events that occurred after Defendants detained Plaintiffs.  In other words, evidence related to events that occurred after Defendants turned Plaintiffs over to the Rio Rancho police is irrelevant to Plaintiffs' remaining claims, and such evidence is also unduly prejudicial to Defendants.

The Court notes that Defendants have also filed a trial brief (Doc. 171) in which Defendants request a directed verdict on the unlawful search/arrest claim, as well as on Plaintiff Sarmiento's excessive force claim.  Based on the Court's findings on the unlawful search/arrest claim on the cross-motions for summary judgment, as well as the findings contained in this

Memorandum Opinion and Order, it is unnecessary to rule on the request for a directed verdict on that claim. As for Defendants' request regarding Plaintiff Sarmiento's excessive force claim, the Court denies the motion, finding that questions of fact exist as to the reasonableness of the force used against Plaintiff Sarmiento.

What remains of Plaintiffs' claims is the unlawful seizure claim, which is limited to the initial stop and detention of Plaintiffs by Defendants Carson and Mangin; and Plaintiff Sarmiento's excessive force claim. The only issue for the jury in the unlawful seizure claim is whether Defendants had reasonable suspicion to stop and detain Plaintiffs.

## VI.     Defendants' Objections to Plaintiffs' Exhibits (Doc. 168)

Defendants' only objection to Plaintiffs' exhibits is the photographs of the area of Plaintiffs' residence. At the hearing, the Court OVERRULED this objection by virtue of the Court's ruling on a similar motion in limine filed by Defendants (Doc. 146 – see above).

## VII.    Plaintiffs' Objections to Defendants' Exhibit List (Doc. 162)

Plaintiffs object to Defendants' Exhibits A and B, which are documents pertaining to the Task Force activities which precipitated the presence of Defendants on the night of the incident. The Court SUSTAINED Plaintiffs' objections to Exhibits A and B at the hearing, but will allow Defendants to testify concerning the reasons they were serving as members of the task force when the encounter with Plaintiffs occurred.

**SO ORDERED**.

_____
UNITED STATES DISTRICT JUDGE