## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO
_____

PHILLIP MARTINEZ and RICARDO
SARMIENTO,

     Plaintiffs,

v.                                                      No. 08-cv-1046 WJ/LFG

GARY CARSON and DON MANGIN,
in their individual capacities,

     Defendants.

### MEMORANDUM OPINION AND ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEY FEES AND EXPENSES

THIS MATTER comes before the Court on Plaintiffs' Motion for Attorney Fees and Expenses filed May 6, 2011 (Doc. 199). A hearing was held on this motion on Thursday, July 28, 2011. Plaintiffs, as the prevailing party in this § 1983 litigation, move for $184,227.49 in total attorney's fees and expenses. Defendants oppose the motion and deny that Plaintiffs are entitled to attorneys fees, and in the alternative request that Plaintiffs receive no more than $42,071 in fees. Having considered the parties' submissions and the applicable law, the Court finds that the motion shall be granted in part.

### BACKGROUND

Phillip Martinez and Ricardo Sarmiento ("Plaintiffs") are residents of Rio Rancho. Plaintiffs originally included Peter Camacho, Jason Bowie, James LaPorte, Don Mangin, Gary Carson, and Mike Bouska as defendants in the complaint. Mike Bouska, Don Mangin, and Gary Carson were at the time of the underlying events employed by the New Mexico Department of Corrections ("NMDC"). Peter Camacho, Jason Bowie, and James LaPorte were law enforcement officers with the Rio Rancho Department of Public Safety ("DPS"). Mike Bouska was dismissed when Plaintiffs stipulated to the dismissal of all claims under the New Mexico Tort Claims Act

(Doc. 52). Peter Camacho, Jason Bowie and James LaPorte were dismissed by stipulation after the parties reached a settlement of all claims against those defendants (Doc. 106).

The events on which this lawsuit is based took place on July 6, 2007 around 10 p.m. NMDC, the DPS, and other agencies were participating in a Joint Task Force ("JTF") to intervene in gang operations and identify individuals with outstanding arrest warrants, parole violations, and probation violations in high crime areas of Rio Rancho, New Mexico. Lt. Peter Camacho was the primary officer in charge of the JTF. During the relevant events, Lt. Camacho was the driver of the patrol unit, and Defendants Mangin and Carson, NMDC employees, were passengers. Plaintiffs were standing together in a patio area adjacent to Mr. Martinez' apartment building in Rio Rancho after Mario Castro had just finished cutting the hair of Mr. Martinez' son, when the car of Defendant officers entered the driveway, turned on high-powered lights, and commanded them to stop. Officers Carson and Mangin detained Mr. Martinez and Mr. Sarmiento outside the apartment while Lt. Camacho pursued Mr. Castro inside the apartment. When Rio Rancho DPS officers arrived a few minutes later, Carson and Mangin transferred Plaintiffs into the custody of DPS, who held them for several more hours. Plaintiffs were ultimately charged by Lt. Camacho with fleeing and evading a police officer, but the charges were later dropped.

Defendants first moved for summary judgment on the basis of qualified immunity before discovery was conducted in this case (Doc. 33). The Court denied this motion in part, but granted summary judgment on the excessive force claim asserted by Plaintiff Martinez (Doc. 55). In April 2010, after taking depositions and otherwise conducting discovery, Defendants filed a renewed motion for summary judgment on the basis of qualified immunity (Doc. 76) and Plaintiffs filed a motion for summary judgment as to liability (Doc. 77). Plaintiffs attached and relied on an exhibit in their motion which contained testimony obtained from Lt. Camacho in

violation of an order staying discovery. The Court struck both of these motions, allowed Plaintiffs to depose Lt. Camacho properly, and invited the parties to re-file the motions with new supporting exhibits based on this testimony (Doc. 120). The parties did so, and the Court denied both motions (Doc. 135). In doing so, the Court ruled that the NMDC defendants did not "cause" Plaintiffs' continued detention at the hands of the Rio Rancho DPS (Doc. 135 at 13-14).

Thus, the case proceeded to jury trial on a discrete, more narrow set of claims: whether Defendants caused Plaintiffs to be seized without reasonable suspicion, and whether Defendants caused Plaintiff Sarmiento to be subjected to excessive force. On April 6, 2011, the jury returned a verdict in favor of Plaintiffs in the amount of $2,500 in compensatory damages and $2,500 in punitive damages against each Defendant (Doc. 191).

Plaintiffs now move for $184,227.49 in attorney's fees and expenses. Defendants contend that Plaintiffs are not entitled to any fees or expenses, or in the alternative, to at most $42,071. There are three issues raised by this petition for attorney's fees: whether Plaintiffs are the "prevailing party"; how to calculate the "lodestar" figure based on a reasonable hourly rate for each of Plaintiffs' attorneys and the reasonable number of hours worked; and whether the lodestar amount should be adjusted upward or downward. Defendants also object to the expenses requested by Plaintiffs.

**LEGAL STANDARD**

To determine the reasonableness of a fee request, a court must begin by calculating the "lodestar amount" of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a "reasonable" fee. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563-65 (1986). The lodestar calculation is the product of the number of "reasonable hours" and a "reasonable rate." *Cooper v. Utah*, 894 F.2d 1169, 1171 (10th Cir. 1990).

This amount should then be adjusted upward or downward based on:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Blanchard v. Bergeron*, 489 U.S. 87, 92 n.5 (1989). "A general reduction of hours claimed in order to achieve what the court determines to be a reasonable number is not an erroneous method." *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1203 (10th Cir. 1986).

"'[T]he most critical factor' in determining the reasonableness of a fee award is 'the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). "If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Hensley*, 461 U.S. at 437. However, "[t]here is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* Furthermore, "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon" should be rejected. *Id.* at 435 n.11.

## DISCUSSION

## I.    Prevailing Party

"[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433 (some internal quotation marks omitted).

"This is a generous formulation that brings the plaintiff only across the statutory threshold." *Id.*

Defendants argue that Plaintiffs are not the "prevailing party" because they did not succeed on their excessive force claims, or on the issue of whether Defendants "caused" Plaintiffs to be arrested by the Rio Rancho police. However, this is an improper attempt to piecemeal the question of whether Plaintiffs "prevailed." Plaintiffs achieved success insofar as they obtained a finding of liability from the jury on the unlawful detention issue against each Defendant, and this is enough to get Plaintiffs "across the statutory threshold." Defendants' argument that a $10,000 jury verdict is a "nominal" award is absurd: nominal damages are usually set around $1, not $10,000. Additionally, the Court agrees with Plaintiffs that settlement negotiations may not be taken into account when determining whether Plaintiffs "prevailed" in comparison with their settlement demands. The issue of whether Plaintiffs are the "prevailing party" does not ask how closely the outcome of the case matched Plaintiffs' expectations, but rather whether Plaintiffs achieved "some" of the benefit they sought in bringing suit. Clearly, a jury finding of liability plus an award of punitive damages against the defendant officers qualifies as some benefit to Plaintiffs, regardless of the amount of damages and settlement demands that preceded the jury trial.[1] Therefore, Plaintiffs are entitled to recover fees for the work performed on this case.

## II.    Calculating the "Lodestar" Amount

### A.    Reasonable Hourly Rates

The Court begins the "lodestar" inquiry by determining the reasonable hourly rate for

---

[1] The Court agrees with Plaintiffs that the settlement negotiation preceding trial are not helpful for the purposes of this motion. A "downward adjustment of fees based on settlement negotiations is not well-founded," because "Rule 68 [of the Federal Rules of Civil Procedure] provides a practical tool by which parties may protect against costs." *Cooper v. Utah*, 894 F.2d 1169, 1172 (10th Cir. 1990).

each of Plaintiffs' attorneys. In their brief-in-chief, Plaintiffs explain that five attorneys worked on this case at various stages, and request compensation for Paul Kennedy at $450/hour, Mary Y.C. Han at $350/hour, Arne R. Leonard at $300/hour, Darin M. Foster at $250/hour, and Sheila D'Ambrosio at $180/hour. Defendants propose more reasonable hourly rates of $350/hour for Paul Kennedy, $300/hour for Mary Y.C. Han, $200/hour for Arne R. Leonard, $175/hour for Darin M. Foster, and $150/hour for Sheila D'Ambrosio.

Defendants point to an opinion written by Senior District Judge John Conway in 2010, *Avila v. Ratchner*, No. 01-cv-349 (Doc. 214 filed Sept. 27, 2010). Judge Conway awarded attorney's fees to attorneys with Kennedy & Han as follows: Mary Y.C. Han at $300/hour; Caren I. Friedman at $250/hour; Arne R. Leonard at $200/hour; Kirtan Khalsa at $200/hour; and Kristin Morgan-Tracy at $200/hour. Although it was not discussed in the opinion, Judge Conway also awarded Paul Kennedy $450/hour, which was the amounted requested by plaintiffs in that case. The Court finds these rates relevant and, as explained in detail, the Court will adopt the Defendants' proposed hourly rates in determining the lodestar fee amount in this case.

### 1.    Paul Kennedy

Plaintiffs request an hourly rate of $450, and Defendants request a rate of $350. Kennedy's affidavit states that he was awarded $450/hr by Judge Conway in 2010. Kenendy Aff. ¶ 9. While Judge Conway did award Paul Kennedy $450/hour, the opinion did not address the objections to that rate and was entirely silent on the issue. The opinion thus lacks persuasive value on this issue. Kennedy avers this has been his hourly rate charged in civil cases since 2003. *Id.* ¶ 10. While this may be true, he provides no evidence that the New Mexico market would normally encompass such a rate, even at its upper end and particularly at a time when New Mexico is still suffering from the effects of what has been a prolonged period of economic downturn throughout the United States. He does provide extensive detail on his background and

6

experience in civil rights cases, but even the affidavit of an expert in attorney's fee cases, attorney Philip Davis, does not explain what the normal market rate for the area is. *See* Davis Aff. ¶ 11 (Doc. 199-5) (asserting that all Plaintiffs' requested rates "are within the range of market rates for lawyers of comparable skill and experience in the New Mexico legal community" without further explanation). Furthermore, Davis himself states that his own hourly rate is $350. *Id.* ¶ 10. The Court views Phil Davis as an attorney who is comparable to Paul Kennedy in terms of reputation, talent, skill as a civil rights trial lawyer.

In 2003, this Court noted that $225 an hour is what it normally considers to be a reasonable hourly rate for attorneys of the highest skill level and experience in New Mexico.[2] *Huebner v. City of Roswell*, No. 01-cv-1238 (Doc. 42 filed Feb. 6, 2003). While that was many years ago, a rate of $350 is more proportional to the period of time passed than a rate of $450. Therefore, the Court agrees with Defendants that a reasonable hourly rate for Paul Kennedy is $350/hour, although in making this ruling the Court acknowledges Kennedy's superb trial advocacy skills and his status as one of New Mexico's preeminent trial lawyers.

## 2. Mary Han

Plaintiffs request an hourly rate of $350 and Defendants request an hourly rate of $300 for Mary Han. The only evidence in Kennedy's affidavit (filed on her behalf) concerning her hourly rates is that the City agreed to settle with her at a rate of $300/hr in 2003 and Judge Conway's opinion awarded her this rate as well in 2010. Therefore, the affidavit is not sufficient evidence to award her $350/hour only a year later. Defendants point out that $300 is a very high rate and matches her skill and experience in this market, and the Court agrees.

---

[2] Plaintiffs object that the relevant geographic area in this previous case was Roswell, but the case was litigated in Albuquerque and the docket reflects that the plaintiff's attorneys were from Albuquerque.

### 3.      Arne Leonard

Plaintiffs request a rate of $300, and Defendants request $200. Leonard's affidavit states that he has been approved at a rate of $200, and provides no evidence of any awards at the higher rate of $300/hr that he requests here. Leonard Aff. ¶ 10. He simply states that this rate does not take into account his long experience as a judicial clerk. *Id.* Judge Conway's opinion points out that "[a]lthough Mr. Leonard asserts that Kennedy & Han bills him out at $300.00 per hour, there is no evidence offered to indicate that clients are willing to pay that amount for his services." *Avila*, Doc. 214 at 6. The affidavit now states that "[$300] is the normal hourly rate at which my employer has billed for my services on other cases since I joined the firm." Leonard Aff. ¶ 11. This is not quite the same as evidence that clients are willing to pay the rate. The Court does not find that $300 is a reasonable rate for this market, and will instead award $200 per hour as requested by Defendants.

### 4.      Darin Foster

Plaintiffs request $250/hour and Defendants request $175/hour. Judge Conway awarded Foster $175/hr in *Avila*. Philip Davis' affidavit admits that Darin Foster's billing rate of $250 is "at the upper end of the range of market rates for a lawyer of [his] years' experience." Davis Aff. ¶ 11. Foster graduated law school in 2005 and has worked as a civil rights lawyer in New Mexico since 2006. Given his lack of experience, I view $175/hr as an overly generous rate for Foster.

### 5.      Sheila D'Ambrosio

Plaintiffs request $180/hour and Defendants recommend $150/hour. D'Ambrosio has only been practicing law in New Mexico since 2010. She graduated from law school in California in 1980 and has been a member of the California bar since then. She did not practice law, but was a legal editor for law publishing companies and has served in various capacities

such as staff attorney with the California state bar. She is not a trial lawyer, but appears to do legal research for the firm's cases. The Court finds that $150/hour is a reasonable rate for a lawyer who has practiced very little law.

### 6. Conclusion

Plaintiffs' fee award, based on the number of hours requested by Plaintiffs, is reduced to $116,975.00 when the hourly rates of each attorney are discounted as discussed above, and Plaintiffs' post-judgment fee award is reduced to $7,470.

### B. Reasonable Number of Hours

Plaintiffs request compensation for the following number of hours billed by their attorneys:

| | |
|---|---|
| Paul J. Kennedy | 94.0 hours |
| Mary Y.C. Han | 28.6 hours |
| Arne R. Leonard | 198.5 hours |
| Darin M. Foster | 197.6 hours |
| Sheila D'Ambrosio | 8.1 hours |

Defendants raise objections to particular entries which concern unsuccessful claims or defendants, such as dismissed defendants Bouska, Laporte, or claims made under the NM Tort Claims Act, meetings with counsel for the Rio Rancho defendants who settled out, or time spent on issues raised pre-trial on which Defendants prevailed. Additionally, Defendants point to many entries which pertained to all defendants and claims, and recommend that such entries be cut in half. Lastly, Defendants raise objections to entries in Plaintiffs' attorney time sheets that are related Defendants' motion for sanctions, and duplicative work done by more than one attorney at trial or on motions.

The Court further sustain Defendants' objections to hours related to the Defendants'

motion for sanctions for discovery violations committed by Plaintiffs. As explained above,

Plaintiffs did not prevail on this issue, and were in fact sanctioned. They should not recover

attorney's fees for work performed in connection with this issue. Specifically, Defendants object

to hours billed by Darin Foster in connection with Defendants' second motion for partial

summary judgment,[3] the motion to strike, the referral to the magistrate judge, and discussion

with other counsel; hours billed by Arne Leonard which include drafting the response to the

motion to strike and objections to the magistrate judge's report and recommendations ("R&R"),

which found that Plaintiffs had committed sanctionable discovery violations, and reviewing the

Court's order partially adopting the R&R; hours billed by Mary Han in connection with the

R&R; and hours billed by Paul Kennedy in connection with the motion to strike, the R&R, and

the hearing before this Court. The hours thus being stricken are as follows:

| Attorney | No. of hours billed | Fees at reasonable hourly rates |
|---|---|---|
| Paul J. Kennedy | 16.5 hours | $  5,775.00 |
| Mary Y.C. Han | 1.8 hours | $     540.00 |
| Arne R. Leonard | 43.4 hours | $  8,680.00 |
| Darin M. Foster | 4.3 hours | $     752.50 |
| Sheila D'Ambrosio | 0 hours | $       0.00 |
| Total | 66 hours | $15,747.50 |

This amounts to a total figure of $15,747.50 which will be deducted from Plaintiffs' bill.

At the close of their reply brief, Plaintiffs concede Defendants' objection to 11.7 hours

billed by Darin Foster for time spent on initial legal research for this case. The Court will

---

[3] Although the Court is not sustaining Defendants' objections related to the work done by Plaintiffs on the second round of summary judgment motions in this case – which were stricken from the record as part of the sanctions entered against Plaintiffs – the billing entries related to the summary judgment motions that are not separated from those related to the motion to strike will be stricken in their entirety.

therefore sustain this objection, and remove a further $2,047.50 (11.7 hours at $175) from Plaintiffs' fee award.

The Court will overrule the balance of Defendants' objections, including the objections to the work billed by Plaintiffs' attorneys on post-judgment matters in this case.[4] Rather than sustaining Defendants' specific objections to hours spent on dismissed defendants and unsuccessful claims, the Court believes it is appropriate to adjust the lodestar figure to account for these objections.

Thus, the final number of hours reasonably spent on this case is as follows:

| Attorney | No. of hours billed | Fees at reasonable hourly rates |
|---|---|---|
| Paul J. Kennedy | 83.3 hours | $ 29,155.00 |
| Mary Y.C. Han | 26.8 hours | $   8,040.00 |
| Arne R. Leonard | 182.3 hours | $ 36,460.00 |
| Darin M. Foster | 181.6 hours | $ 31,780.00 |
| Sheila D'Ambrosio | 8.1 hours | $   1,215.00 |
| Total | 482.1 hours | $106,650.00 |

## III.    Adjusting the "Lodestar" Figure

Both parties argue that the Court should adjust the lodestar figure. Plaintiffs believe it should be adjusted upward to reflect the protracted motions practice of Defendants Carson and Mangin, the hardship of delayed payments to plaintiffs' attorneys in general, and the undesirability of taking on cases with excessive motions practice and requests for sanctions. Defendants argue that the amount should be adjusted downward because Plaintiffs prevailed only on a small fraction of their claims – out of two false arrest claims and two excessive force claims, Plaintiffs prevailed on two unlawful detention claims and one excessive force claim. The

---

[4] Plaintiffs represent that Paul Kennedy billed 5.8 hours, and Arne Leonard billed 27.2 hours.

Court agrees in part with Defendants. The most crucial factor in awarding attorney's fees is success; and while Plaintiffs certainly experienced some degree of success, they prevailed on claims with a lesser scope than those they initially asserted.

Plaintiffs argue that they achieved a high degree of success because the jury awarded punitive damages, and because the excessive force claims were akin to a "lesser included offense" that was subsumed under the illegal detention claim. Plaintiffs are unconvincing with regard to both parts of this argument. First, the fact that the jury awarded punitive damages does not increase the scope of Plaintiffs' success; it merely speaks to the amount Plaintiffs recovered on a portion of their claims. That is, punitive damages does not effect the claims on which they prevailed relative to the claims which they initially asserted. Second, Plaintiffs' assertions that an "excessive force" claim collapses into an unlawful detention claim are entirely misplaced. Plaintiffs cite *Cortez v. McCauley*, 478 F.3d 1108 (10th Cir. 2007) (en banc), but this case does not support their argument. *Cortez* merely teaches that an excessive force claim is usually dependent on an unlawful detention claim; that is, a fact-finder cannot know whether force was excessive without first determining what amount of force was reasonably necessary to effect the stop, and whether the stop itself was justified. *Cortez* does not say that an excessive force claim is secondary to an illegal detention claim. They are two entirely separate claims, and Plaintiffs cannot raise the claims only to lose on them and then represent that they never wished to prevail on the claims after all.

Therefore, the Court must adjust the fee award to account for: (1) the jury verdict for Defendants on the excessive force claim asserted by Plaintiff Sarmiento; (2) the Court's grant of summary judgment for Defendants on the excessive force claim asserted by Plaintiff Martinez; (3) the Court's grant of summary judgment for Defendants on Plaintiffs' claims of false arrest, resulting in a twelve hour detention and five hour detention, respectively. The Court finds that a

fee reduction of ten percent is appropriate to account for these factors. While a greater discount than ten percent might be warranted based on the results obtained, the Court will decline to cut Plaintiffs' fee award further, recognizing that the length of complexity of these proceedings was due in part to the aggressiveness with which Defendants litigated the case.[5] Furthermore, based on the evidence of damages that was before the jury, the Court finds that $5,000 in compensatory damages for each Plaintiff is a very generous award and constitutes a highly successful result on the unlawful detention claims. Therefore, Plaintiffs' fee award will be reduced only by ten percent, to $95,985.00. New Mexico gross receipts tax of seven percent on this figure brings the amount to $102,703.95.

## IV.    Expenses and Costs

Lastly, Plaintiffs request $856.24 in expenses and $664.09 in costs, fax, and postage. Defendants object to these expenses as those that are part of the normal overhead at a law firm rather than costs that would be billed to a client. *See Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir. 1983) (distinguishing expenses included in the attorney's fee award from costs that are "normally absorbed as part of the firm's overhead"), *overruled on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 718 n.4 (1987). The Court finds that the expenses costs are awardable as "other expenses" under 42 U.S.C. § 1988(b), but will sustain Defendants' objections relative to a few of the expenses.

The expenses are: Service of Subpoena for Deposition upon P. Camacho; Service of

---

[5] A defendant in a civil rights case is absolutely entitled to aggressively defend claims asserted by a plaintiff. However, in the event that a civil rights plaintiff prevails at trial, then the statutory fee shifting provisions allow a plaintiff to recover fees from a defendant. It should therefore come as no surprise to a defendant that the more aggressively he or she defends a civil rights case, the higher the attorney fee request by a prevailing plaintiff will be. When the defendant chooses to aggressively defend a civil rights case, the plaintiff should not be forced to simply lie down in face of such tactics.

revised Subpoena for Deposition upon P. Camacho; Walgreens Photos; Service of Summons for Trial upon Lt. Peter Camacho; Summons: James LaPorte, Peter Camacho, Mike Busby, Don Mangin, Jason Bowie; Summons: Gary Carson, Mike Bouska, Don Mangin; Summons: Brion Berrios, Leighton Redhouse; Transcription Officer Statements; City of Albuquerque Parking; and CAD Records Case #07005080. Defendants object that: (1) the photos are the same ones included in the bill of costs; (2) the summons for Berrios and Redhouse should be excluded because neither officer had anything to do with the case; and (3) the transcription of the officer statements is the interview of Lt. Camacho which was found to be a violation of a discovery stay order, resulting in sanctions against Plaintiffs.

Although Plaintiffs discuss these expenses in a cursory manner in their opening brief by averring that these expenses would normally be passed onto the client, Plaintiffs make no answer in their reply brief to the Defendants' specific objections described above. Therefore, the Court finds that Plaintiffs concede the matter, and will sustain Defendants' objections with regard to the Walgreens photos ($16.53), the summons for Berrios and Redhouse ($180), and the transcription of the officer statements ($143.21). These expenses, which total $339.74, will not be included as part of Plaintiffs' fee award. Plaintiffs are therefore awarded a total of $516.50 in expenses and $664.09 in costs, fax, and postage.

**THEREFORE, IT IS ORDERED** that Plaintiffs' Motion for Attorney Fees and Expenses (Doc. 199) is GRANTED IN PART. Plaintiffs are hereby awarded $103,884.54 in attorney's fees and expenses.

**IT IS FURTHER ORDERED** that Plaintiffs may request fees related to work regarding the hearing on their motion for attorney fees (Doc. 227), the supplemental affidavits ordered by the Court (Doc. 226), and Defendants' Amended Renewed Motion for Judgment as a Matter of Law (Doc. 229). Plaintiffs shall submit an affidavit detailing their fees, based on the rates

awarded by the Court herein, within **ten days** of the close of briefing on Defendants' motion (Doc. 229). Defendants may object to the fee request, if they wish, within **ten days** of Plaintiffs' filing.

_____

UNITED STATES DISTRICT JUDGE