# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

PHILLIP MARTINEZ and RICARDO
SARMIENTO,

       Plaintiffs,

  v.                                                                                No. 08-CV-1046 WJ/LFG
GARY CARSON and DON MANGIN,
in their individual capacities,
Defendants.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' AMENDED RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

THIS MATTER comes before the Court upon Defendants' Amended Renewed Motion for Judgment as a Matter of Law, filed August 5, 2011 **(Doc. 229)**. Having considered the parties' briefs and the applicable law, I find that Defendants' motion is not well-taken and is accordingly denied.

## Background

Following a two-day trial, a jury found that Plaintiffs' Fourth Amendment rights were violated by Defendants, in that Defendant Carson unlawfully seized Plaintiff Martinez without reasonable suspicion, and that Defendant Mangin unlawfully seized Plaintiff Sarmiento without reasonable suspicion.  Based on these findings, the jury awarded Mr. Martinez $2,500.00 in compensatory damages against Defendant Carson, and the same amount in punitive damages. The jury also awarded Mr. Sarmiento $2,500.00 in compensatory damages against Defendant Mangin and the same amount in punitive damages. Docs. 191 (Special Verdict) and 197 (Amended Judgment).  In the instant motion, Defendants contend that judgment should be

entered in their favor under Fed.R.Civ.P. 50(b). Alternatively, Defendants contend that they are entitled to a new trial under Rule 59(a) based on the lack of substantial evidence to support the verdict.

## I.     Whether Instant Motion is Untimely

In the response, Plaintiffs raise the issue of whether the instant motion is untimely. The Court has addressed this issue separately, finding that this motion has been timely filed under the Federal Rules of Civil Procedure, and that this Court has jurisdiction over Defendants' renewed motion for judgment as a matter of law. *See* Doc. 238.

## II.    Legal Standard

Judgment as a matter of law under Fed.R.Civ.P. 50 is entered in favor of the moving party if there is no legally sufficient evidentiary basis with respect to a claim or defense under the controlling law. *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 1007). The Court must construe the evidence and inferences most favorably to the nonmoving party, and may not "weigh the evidence, pass on the credibility of the witnesses, or substitute our conclusions for that of the jury." *Harolds Stores, Inc. v. Dillard Dep" Stores, Inc*., 82 F.3d 1533, 1546 (10th Cir.1996).

The party seeking to set aside a jury verdict must demonstrate trial errors which constitute prejudicial error or that the verdict is not based on substantial evidence. *Rasmussen Drilling, Inc. v. Kerr-McGee Nuclear Corp*., 571 F.2d 1144 (10th Cir.), *cert. denied*, 439 U.S. 862 (1978). Jury findings on sharply conflicting evidence are conclusively binding on appeal inasmuch as jurors are charged with the exclusive duty of assessing the credibility of witnesses and determining the weight to be given to their testimony. *Id*.; *White v. Conoco, Inc*., 710 F.2d 1442, 1443 (10th Cir. 1983).

**III.     Whether Defendants are Entitled to JNOV or New Trial**

Defendants request that the Court enter judgment as a matter of law ("JNOV") in their favor, or in the alternative, grant a new trial. To this end, Defendants raise several arguments based on perceived errors of law. First, Defendants contend that sufficient evidence was presented at trial that Defendants had reasonable suspicion to support an investigatory stop. They also contend that testimony and argument was presented at trial that injected the issue of post-investigative conduct to the jury, contrary to the Court's Order entered on Defendants' motion in limine (Doc. 145, 179). Third, Defendants allege legal error because special interrogatories on the issue of qualified immunity were not given to the jury as requested by Defendants and as required by Tenth Circuit case law. Fourth, Defendants assert that a mitigation instruction should have been given to the jury as requested by Defendants. Last, Defendants argue that an instruction on punitive damages should not have been given to the jury.

A.     Reasonable Suspicion for Stop and Detention

Defendants argue that they are entitled to judgment as a matter of law because sufficient evidence was presented at trial to grant Defendants qualified immunity, or in the alternative, a new trial is warranted based on the lack of substantial evidence to support the jury's finding that Plaintiff's Fourth Amendment rights were violated. They point to different categories of testimony in arguing that, based on the totality of circumstances, they had reasonable suspicion to detain Plaintiffs for an investigatory stop.

The Court finds it necessary to comment on Defendants' arguments on this issue. Defendants characterize the section in Plaintiffs' response concerning the insufficiency of the evidence on reasonable suspicion as "new grounds." Reply at 2, n.1. However, I find Plaintiffs' arguments relating to reasonable suspicion to be responsive to Defendants' arguments regarding

3

an entitlement to qualified immunity. Defendants argue they were entitled to qualified immunity because they had reasonable suspicion to detain Plaintiffs for an investigatory stop. Doc. 229 at 6. This approach fuses the qualified immunity inquiry with a substantive Fourth Amendment inquiry. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (distinguishing qualified immunity analysis, which is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted, from Fourth Amendment excessive force substantive inquiry of whether defendant's conduct was objectively reasonable).

In this case, there is no doubt that the law was clearly established that reasonable suspicion is required for an investigatory stop and detention. There are no facts in this case which would have caused the Defendants reasonably to have a mistaken understanding of that clearly established law, nor do Defendants supply any such reasons or facts. In their motion, Defendants contend that they are entitled to qualified immunity because there was reasonable suspicion for the stop. However, that inquiry goes to the merits of the Fourth Amendment claim rather than the qualified immunity question.

*1.     Reliance on Information from Other Officers*

Defendants maintain that they were entitled to rely on information of other officers who were at the scene, and thus did not need to determine themselves whether reasonable suspicion existed for the stop. The Court addressed this issue when it was raised in one of Defendants' summary judgment motions:

> Although police officers may rely on the observations and conclusions of other officers to determine reasonable suspicion or probable cause in a given situation, that reliance must be based either on communications made by the other officers or must be corroborated by the officers' independent observation of pertinent facts. "It is well-established that the police may pool their information to establish probable cause. However, [the arresting officer] must point to an officer who has relayed information to, or received information from, fellow officers based on

> personal observation of the [plaintiffs'] behavior before we may apply this rule."
> *Buck v. City of Albuquerque*, 549 F.3d 1269, 1282 (10th Cir. 2008). . . . Simply
> following along with Lt. Camacho's actions, without an understanding of why he
> was taking them or why they were justified, is not enough.

Doc. 135 at 7-8. Further, the reliance argument does not avail Defendants Carson and Mangin, who were passengers in the patrol car driven by Defendant Camacho. As noted by the Court previously, *U.S. v. Chavez* approved of a situation where the second officer was permitted to rely on the "collective knowledge" of other officers. 534 F.3d 1338, 1345 (10th Cir. 2008). However, in that case, the second officer was *not* present during the circumstances leading to the determination of reasonable suspicion or probable cause. Thus, Defendants Carson and Mangin are not entitled to summary judgment unless they developed a basis for reasonable suspicion on their own, or unless they understood it from Lt. Camacho. The testimony given by Defendants at trial indicated that neither heard any statement by Lt. Camacho, or observed anything on their own which would have supported the legality of the stop. *See* Doc. 232 (Rsp. brief, citation to Trial Transcript).[1]

*2. Reasonable Suspicion for Investigatory Stop*

Defendants next maintain that, under the totality of circumstances, they had reasonable suspicion to stop and detain Plaintiffs. This case went to trial on disputed facts regarding what the officers saw as they approached Plaintiffs, the conduct of Plaintiffs at the time, and whether Plaintiffs fled when the officers gave the stop command. Defendants point to Lt. Camacho's testimony that the officers were patrolling a high-crime area and that three individuals (two of

---

[1] In the interest of efficiency, where feasible, the Court will refer to the parties' briefs which cite to the Trial Transcript instead of including numerous citations to the transcripts throughout. The transcripts have been filed with the Court (Docs. 218, 219 and 220). Citations to the Transcripts herein will refer to Volume of the transcript.

whom were the Plaintiffs) were huddled close together in a dimly-lit carport – which seemed "suspicious in nature." Vol. I at 120:7-9. Plaintiffs point to their own testimony that they were either standing or sitting in the patio area between the carport and the front of their residence, just "hanging out," talking to each other and listening to music. Doc. 232 (Rsp.Brf. at 7). The jury was free to accept or reject either version and find one side more credible than the other.

     As Plaintiffs note, the Court has already rejected Defendants' argument that one's presence in a high-crime area, without more, is sufficient to establish reasonable suspicion. Doc. 55 at 11. Witnesses for the defense testified that Plaintiffs were looking over their shoulder as if to run as the patrol car approached. Vol. I at 122:1-9 (Camacho's testimony that Plaintiffs "looked over their shoulder . . and were preparing to run from me"); Vol. II at 227:17-23 (Carson's testimony that Plaintiffs were "huddling together. . . looking to their back towards the apartment as to look for an area to run or escape from"); Vol. II at 269:3-18 (Mangin's testimony that as the patrol car pulled into the driveway, . . . Plaintiffs "were looking back at us, and they ran"). On the other hand, Plaintiff Sarmiento claimed that he and Mr. Martinez were "just standing there" talking as the officers "started rushing towards us," at which point he heard an officer yell at him to "Get down. . . ."). Vol. I at 67:8-10.

     Testimony was also inconsistent with regard to whether Plaintiffs actually fled after the stop command was given. Lt. Camacho, as well as Defendants Carson and Mangin, testified that Plaintiffs fled after they gave the stop command. Vol. II at 270: 20-21 (Mangin's testimony that ["Plaintiffs] turned to look at us and then immediately turned around and fled"); Vol. I at 114:10-11 (Carson's testimony that Plaintiffs "looked behind their backs. . . towards the property and fled"); Vol. I at 122:8-10 (Camacho's testimony that he told Carson and Mangin "[t]hey're going to run"). Not unexpectedly, Plaintiffs' testimony took the opposite position. Plaintiff

6

Martinez testified that at the time the command was given, he was simply walking towards the apartment to get another beer. Vol. I at 34:15-25. Plaintiff Sarmiento stated that when he heard the command, he "looked back and saw some officers rushing" towards him. He reacted by taking "maybe two steps away from them and then [he] just dropped on [his] knees." Vol. I at 67:9-16.[2] He also denied that he or Mr. Martinez ran away. Vol. I at 67:17-24.

There were similar inconsistencies regarding what the officers saw as they were patrolling the area and first saw Plaintiffs. Defendant Mangin testified that he heard Lt. Camacho say "that looked like a handoff" as the patrol car drove by before the officers made their show of authority in front of the carport. Vol. I at 92:25-93:7. Defendant Carson never heard such a statement. Vol I at 113:9-14. Lt. Camacho stated he did not see any hand gesture at that particular time. Vol. II at185:15-19. Instead, he stated that he saw one of the individuals reach into his right front pocket only after officers had already made the decision to make the investigatory stop and after the officers had pulled up in their vehicle. Vol. I at 122:9-11. From all this, the jury could reasonably infer no such hand gesture was made at all, or if it was made, that it was observed by the officers *after* they had already decided to stop and detain Plaintiffs. Thus, the purported observation of the "handoff" (which Lt. Camacho denied seeing) could not provide a legal basis for the stop.

In the reply, Defendants contend that evidence related to the Plaintiffs' perspective is misdirected in a Fourth Amendment analysis because the relevant inquiry is from the objective officer's standpoint. Reply at 8. Defendants are correct that the appropriate analysis is from an objective officer's view, but whether Defendants in fact observed what they claim to have

---

[2] It is undisputed that Mr. Castro did not heed the stop command and instead ran into the apartment.

7

observed may be refuted by other evidence presented at trial – including evidence presented by Plaintiffs as to what *they* claim to have been doing at the time. In other words, Plaintiffs were entitled to testify at trial concerning what they were doing at the same time the officers claim to have seen conduct which would have given them legal grounds to stop and detain Plaintiffs.

Whether Plaintiffs fled at the patrol car's approach is undoubtedly a crucial fact in determining whether reasonable suspicion existed. However, this Court's Rule 50 analysis precludes either a reweighing of the evidence, or a new credibility determination. There are no surveillance videos to offer incontrovertible evidence supporting either version of what happened. It was the jury's burden to sift through both version, and determine who was more credible. The jurors were required to consider all the evidence under a totality of the circumstances. They were free to infer from all the testimony given either that Plaintiffs prepared to flee as the patrol car approached and then fled (believing Defendants' version) or to reject that version and find Plaintiffs' testimony more credible. Based on the verdict, the jurors obviously found Plaintiffs' testimony to be more credible than Defendants' testimony. Moreover, Defendants have not shown either that they are entitled to JNOV based on evidence presented at trial, or that jury's verdict was insufficiently supported by the evidence presented.[3]

B.    Testimony Regarding Post-Investigative Conduct

Defendants contend that testimony and argument was presented at trial that injected the

---

[3] Plaintiffs argue here that Defendants' testimony (including that of Lt. Camacho) was internally inconsistent regarding whether Plaintiffs looked back toward the *apartment* versus whether they turned their heads to look back at the *officers*. I do not consider the statements of Defendants and Lt. Camacho to be inconsistent with each other. If the jury had decided to believe Defendants' version, it would not necessarily be inconsistent for Plaintiffs to be looking for a way out while *at the same time*, looking back at the officers pursuing them. The critical inconsistencies here concern Plaintiffs' version as compared with Defendants' version of events.

issue of post-investigative conduct to the jury, contrary to the Court's Order entered on Defendants' motion in limine (Doc. 145, 179), and which prejudiced them. Prior to trial, the Court granted Defendants' motion in limine in that it ruled that "evidence related to events that occurred after Defendants turned Plaintiffs over to the Rio Rancho police is irrelevant to Plaintiffs' remaining claims, and such evidence is also unduly prejudicial to Defendants." Doc. 179 at 11.

During trial, the jury was told through testimony and closing arguments that the criminal charges against Plaintiffs were dismissed and that no drugs were found after the Rio Rancho Police Department's investigation was completed. I find that no error occurred here which would warrant either a JNOV or a new trial. The Rio Rancho Defendants in this case had been dismissed by stipulation of parties before the case went to trial. *See* Doc. 106. As Plaintiffs correctly note, it was Defendants' cross-examination of Lt. Camacho which first elicited responses concerning the subject of the search for drugs inside the apartment. Lt. Camacho testified that he believed that "a narcotics transaction" was occurring at the time. Vol. II at 180:2-7. He stated that the reasons for holding the Plaintiffs outside the apartment was the "active investigation" going on inside the apartment as well as "officer safety" concerns. Vol. II at 177:6-13.

This line of questioning was not improper because evidence pertaining to the legality of Plaintiffs' detention was intertwined with what was going on in the apartment when Lt. Camacho chased after Mr. Castro. Vol II. 177:6-12; 179:19-21. The inquiries were directed toward "officer safety" concerns and the justification for Plaintiffs' detention outside of the apartment. The jury's consideration of the totality of the circumstances permitted testimony concerning reasons for the officers' suspicions and the actions they took in addressing these

9

suspicions. At the same time, the admission of such testimony evoked some question by the jury concerning events which ensued following the search and investigation. In response to a jury question,[4] the Court fashioned an instruction to be given to the jury regarding the relevance of the charges filed against Plaintiff and to preclude the jury from considering evidence not relevant to Plaintiffs' claims against Defendants Carson and Mangin:

> [The] charges [initiated by the Rio Rancho Police Department) were dropped. The fact or what those circumstances [are] has nothing to do with Defendants Carson and Mangin. They had nothing to do with whether or not charges were going to be filed, and therefore, it's not relevant towards evaluating the claims in this case that the plaintiffs have against Defendants Carson and Mangin.

Vol. II at 196:6 – 197:15.

Defense counsel agreed to the instruction in order to cure any prejudice which might have resulted from the introduction of evidence relating to Plaintiffs' arrests and charges filed against them. Vol. II at 193 at 23-25. The jury is presumed to have followed that instruction in considering all the evidence. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

Defendants also contend that Plaintiffs' counsel made reference in his closing argument to the criminal claims brought against Plaintiffs by the Rio Rancho Police Department:

> And remember, our claims against Rio Rancho have been resolved. This isn't a case against Rio Rancho officers, it's a case against these Department of Corrections officers, because the Rio Rancho claims are resolved and the criminal claims are dismissed as the Judge told you.

Vol. III at 409:17-24. Defendants claim prejudice from the Court's overruling of defense counsel's objection to these statements. Plaintiffs' counsel did refer in closing argument that Defendants detained Plaintiffs until the Rio Rancho police took them into custody. Vol. III at 409:11-16. However, the reference was clearly in the context of Plaintiffs' claims of illegal

---

[4] *See* Vol. I at 149:15-18; Vol. II at 157:3-5.

seizure. *See* Doc. 185 (Court's Jury Instructions, Number 6). This reference was permissible, and not contrary to the Court's Order on Defendants' motion in limine, which excluded evidence related to events that occurred *after* Plaintiffs were turned over to the Rio Rancho police. Thus, I find no error in my ruling on Defendants' objection during closing argument. The statements were not misleading because they essentially mirrored the language in the Court's curative instruction. They were not irrelevant or prejudicial because defense counsel initiated the questions related to the reason for the search of the apartment and because these questions were also related to whether there was justification for Plaintiffs' detention.

Accordingly, I find that Defendants have not demonstrated that any "post-investigative" statements or evidence constituted prejudicial error which warrant either a JNOV or a new trial.

C.     Qualified Immunity Interrogatories

Defendants contend that they are entitled to a new trial because special interrogatories on the issue of qualified immunity were not given to the jury as requested by Defendants and as required by Tenth Circuit case law in cases in which the judge has decided that the legal issue of qualified immunity depends upon factual issues that are in dispute.

Defendants submitted a special verdict to be submitted to the jury concerning the qualified immunity question. In sustaining Plaintiffs' objection to the form, the Court rejected Defendants' notion that those questions be submitted to the jury, noting that this case did not have any of the "exceptional circumstances" warranting submission of certain factual questions to the jury. *See* Doc. 182-2.[5] The Court stands by its initial ruling on the matter. Although

---

[5] There were three questions on the form submitted by Defendants, asking (1) whether Plaintiffs "looked over their shoulders and behind them as the police car approached with its flashing lights"; (2) whether Plaintiffs "physically moved" after they were ordered to stop; and (3) whether Defendant Camacho communicated to Defendants Carson and Mangin the basis for

issues of qualified immunity normally are questions of law decided prior to trial, in exceptional circumstances historical facts may be so intertwined with the law that a jury question is appropriate as to whether a reasonable person in the defendant's position would have known that his conduct violated that right. *Maestas v. Lujan*, 351 F.3d 1001, 1007 -1008 (10th Cir. 2003) (citations omitted); *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1217-18 (10th Cir. 2008) (accord).

*Maestas* was a sexual harassment case in which the parties disputed whether the defendant was plaintiff's supervisor and whether the sexual relationship was consensual. The law would not be clear to defendant that he was violating plaintiff's rights either if he was not plaintiff's supervisor or if the sexual relationship was consensual. Thus, the court could not make a determination on the qualified immunity question without resolving those factual questions. *See also Catone v. Spielmann*, 149 F.3d 156 (2d Cir.1998) (whether plaintiff was a "deputy" was a question that involved qualified immunity question, where plaintiff was discharged without a hearing from employment in the New York State Department of Environmental Conservation following a gubernatorial change).

Plaintiffs first note that Defendants have waived this argument because they did not preserve their objections to the Court's proposed jury instructions regarding this issue during trial. Defendants do not appear to address this argument in the reply brief, and for that reason this issue may be summarily rejected. However, the Court also notes that this case does not call for a resolution of facts by the jury before the Court can determine whether Defendants were entitled to the defense of qualified immunity. The law was clearly established that the officers

---

his reasonable suspicion regarding possible criminal activity before Defendants got out of the police car.

needed reasonable suspicion to stop and detain Plaintiffs and that without something more than "hanging around" in a high-crime area, Defendants did not have sufficient grounds for stopping and detaining Plaintiffs. There was no disputed historical fact that needed to be resolved before determining whether the officers could have known they were violating Plaintiffs' rights. The real issue involved a pure credibility determination which resolved the merits of the Fourth Amendment inquiry, not a qualified immunity defense.

Finally, the Court notes that precedent on this issue is not crystal clear. The Tenth Circuit has held that it is error to submit the question of whether a defendant's conduct was objectively reasonable to a jury. *See Gonzales v. Duran* 590 F.3d 855, 859 (10th Cir. 2009) (holding harmless error in submitting to jury question of defendant's conduct was objectively reasonable in unlawful detention case where jury found plaintiff's constitutional rights not violated). Prior to *Gonzales*, however, *Maestas* submitted a question to the jury similar to that which *Gonzales* later determined was a question to be decided only by the Court. Interestingly, while the specific factual questions were whether defendant was plaintiff's supervisor, and whether the sexual relationship was consensual, neither question was actually posed to the jury to answer. Instead, the jury was asked whether defendant had successfully maintained the "good faith" defense of qualified immunity.[6] Thus, it appears that while the "good faith" defense of qualified immunity was acceptable as a jury question in *Maestas*, it was later considered a question to be reserved

---

[6] The court's instruction to jury was:
In order for [Mr. Lujan] to prevail on his defense of qualified immunity, he bears the burden of proving by a preponderance of the evidence that he act[ed] at all times in good faith in carrying out discretionary duties, reasonably believing that he was not violating the plaintiff's constitutional rights.

351 F.3d at 1009. The Court went on to explain that the instruction "only permits a jury evaluation of the reasonableness element of the qualified immunity defense. . . ." *Id.*

for the court in *Gonzales*. *See also Keylon v. City of Albuquerque*, 535 F.3d 1210 (10th Cir. 2008) (reversing and remanding case where district court submitted question to jury asking whether defendant officer had reasonable belief he had probable cause to arrest plaintiff, and holding that officer's credibility as to whether he believed predicate crime had been committed did not warrant qualified immunity issue to jury).

   The sticking point here is the lack of direction about where the line should be drawn between the jury making credibility determinations that involve the merits of a Fourth Amendment inquiry, versus making credibility determinations in order to resolve the qualified immunity defense. The latter approach would require the submission *de rigueur* of practically all credibility-related questions to a jury and would hardly conform to this circuit's requirement of "exceptional circumstances" before allowing the jury to consider such issues.   For all of the above reasons, I find no legal error constituting prejudice to Defendants in this Court's rejection of Defendants' special interrogatories concerning qualified immunity questions, and thus find no basis either for granting JNOV or for granting a new trial.

D. <u>Mitigation Instruction</u>

   Defendants also argue that a mitigation instruction should have been given to the jury as requested by Defendants.  Their contention is that evidence at trial demonstrated that Plaintiffs ignored the officers' command to "stop" and that Plaintiffs' running from the officers helped result in Defendants' decision to make an investigative detention.

   As Plaintiffs note, there are problems with Defendants' position on this issue.  First, Defendants assume a finding that Plaintiffs fled.  Plaintiffs denied doing so, and the jury apparently believed them, based on the jury's verdict.  Second, I agree with Plaintiffs that Defendants are essentially attempting to inject the issue of comparative fault into Plaintiffs'

14

Fourth Amendment claim. Defendants offer no legal basis for such a theory, nor is it supported by case law. *See Clappier v. Flynn*, 605 F.2d 519, 530 (10th Cir. 1979) (civil rights claim for alleged deprivation of right to be free from cruel and unusual punishment did not allow comparative fault). The two cases offered by Defendants are not helpful. One case regards mitigation of damages by a plaintiff who had been wrongfully terminated, and the issue was whether she attempted to find employment after termination. *See McClure v. Ind. School Distr. No. 16*, 228 F.3d 1205, 1214 (10th Cir. 2000) (discussing plaintiff's duty to mitigate damages after she was wrongfully terminated by attempting to find employment). The other case found that plaintiff's own conduct did not support a *punitive* damages award. *See Green v. Johnson*, 977 F.2d 1383, 1389 (10th Cir. 1992). Thus, Defendants are not entitled to either JNOV or a new trial based on the Court's failure to give a mitigating damages instruction.

E.      Punitive Damages Instruction

Last, Defendants argue that an instruction on punitive damages should not have been given to the jury because there was no evidence of "willful, wanton, or reckless" conduct on the part of Defendants, or that Defendants were recklessly indifferent to Plaintiffs' constitutional rights. Defendants' position is grounded in what the officers stated they observed and did on the night in question.

Defendants concede that there was some testimony presented at trial which could be related to an evil motive or intent. For example, Plaintiff Martinez testified that Lt. Camacho pointed his gun at his daughter, Vol. I at 38:2-4, and kicked the door open despite Martinez asking him not to do so, Vol. I at 36:19-25. Defendants argue that this is not enough for a punitive damages award, and the Court agrees. First, Lt. Camacho's behavior is not necessarily indicative of the conduct of Defendants Carson and Mangin. Second, Lt. Camacho's conduct

15

was tied into the conduct of the Rio Rancho officers, for which Defendants could not be held liable.

Defendants do not take the position – nor can they -- that the Court's instructions on punitive damages were themselves legally incorrect. *See Smith v. Wade*, 461 U.S. 30, 51 (1983) (reckless or callous disregard for a plaintiff's rights, as well as intentional violations of federal law, should be sufficient to trigger a jury's consideration of the appropriateness of a punitive damages award). The Court agrees that, under the circumstances as presented by Defendants, the evidence would be insufficient to support a punitive damages instruction. However, the allowance of punitive damages was within the jury's discretion. *See Miller v. City of Mission, Kansas*, 705 F.2d 368, 377 (10th Cir.1983) (allowance of punitive damages within the discretion of the trier of fact).

In this case, however, different versions of what happened were presented to the jury, and the jury was entitled to believe either one. Plaintiffs' version of the facts would include a decision by the officers to "check out" Plaintiffs in the absence of a legal reason to stop and detain them. It would also permit the jury to find that Defendants charged at Plaintiffs with no legal reason to do so, forced Plaintiffs to the ground and drew their weapons. *See United States v. Magleby*, 241 F.3d 1306, 1312 (10th Cir. 2001) (quoting *Wingfield v. Massie*, 122 F.3d 1329, 1333 (10th Cir. 1997) (Even where a defendant denies having the requisite intent, a jury may disbelieve the defendant "if [his] words and acts in light of all the circumstances makes [his] explanation seem improbable."). From this set of circumstances, the evidence was sufficient to support an award of punitive damages and thus it was not error for the Court to send a punitive damages instruction to the jury.

**Conclusion**

In sum, I find and conclude that the evidence and testimony presented at trial was subject to credibility determinations to be made by the fact finder.  In this case, Defendants have not shown either that they are entitled to JNOV based on evidence presented at trial, or that the jury's verdict was insufficiently supported by the evidence presented.

It was not error for the Court to allow in evidence which Defendants allege was inconsistent with its Order on Defendants' motion in limine.  Defense counsel initiated questions in that area, and the Court included a curative instruction.

I also find no legal error constituting prejudice to Defendants in this Court's rejection of Defendants' special interrogatories concerning qualified immunity questions for the jury, and thus no basis either for granting JNOV or for granting a new trial.  Also, the Court's alleged failure to give a mitigating damages instruction was not legal error.  Defendants confuse a plaintiff's responsibility to mitigate damages with a comparative negligence instruction, which is not appropriate in § 1983 claims.

Finally, I find and conclude that sufficient evidence was presented at trial to warrant submission of a punitive damages instruction to the jury.  None of the grounds raised by Defendants is sufficient for the Court to consider granting Defendants JNOV, or to consider retrying this case.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Amended Renewed Motion for Judgment as a Matter of Law **(Doc. 229)** is hereby DENIED for reasons described in this Memorandum Opinion and Order.

UNITED STATES DISTRICT JUDGE